W. M. AFFLICK et al., Respondents, v. ROBERT STREETER, Appellant.

Kansas City Court of Appeals, May 3, 1909.

1. SALES: Resale: Waiver of Time: Instructions. Defendant sold plaintiff certain hogs, under certain warranty as to what the hogs would bring on the market and on the issue, or whether the hogs were to be sold in September or October, and the waiver of the time of such resale and instructions are held sufficient to cover a sale in September. The evidence authorized the finding of the jury, that there was a waiver of the place of sale and other matters and the court's action in amending instructions is approved.

2. EVIDENCE: Books of Commission Men: Weights and Prices: Copies. The entries in the books of the commission house in Chicago as to the weights, prices and dockage of stock is admissible evidence when made from the original tickets; and verified copies of such books are admissible in evidence.

Appeal from Boone Circuit Court.—*Hon. Alexander H. Waller,* Judge.

AFFIRMED.

*P. H. Cullen, Arthur Bruton* and *W. H. Rothwell* for appellant.

(1)   The court erred in not sustaining a demurrer to the evidence because it clearly appeared (1) that

defendant had no knowledge of the subsale to Rumans under a guarantee nor of the delay in shipping. (2) that defendant had no notice that plaintiffs resold said hogs under a similar guarantee with privilege to the subpurchaser to resell, and (3) it being doubtful whether the plaintiffs guaranteed the hogs to Rumans and thereby become liable to him, the plaintiffs first instruction is[1] erroneous in holding the defendant liable even though the plaintiffs did not sell to Rumans under a guarantee and even though defendant had no notice that the hogs were bought by plaintiff with a view of resale to a local dealer, (5) the numerous instructions offered by defendant on this theory was erroneously refused. Black v. Dudley, 75 N. Y. App. Div. 72; Copas v. Anglo Co., 73 Mich. 541; Sutherland v. Round, C. C. A., 57 Fed. 467; Bunch v. Potts, 57 Ark. 257, 21 S. W. 437; Wappoo Mills v. Commercial Guano Co. (Ga.), 18 S. E. 308; Voorheis v. Fry (Tex. Civ. App.), 52 S. W. 580; Williams v. Reynolds, 6 B. & S. 495; 2 Joyce on Damages, sec. 1632; Thol v. Henderson, L. R. 8 Q. B. Div. 457, 46 L. T. N. S. 483; Rahm v. Deig, 121 Ind. 283, 23 N. E. 141; Penn v. Smith, 104 Ala. 445, 18 So. 38. (2) The court erred in directing the jury that a failure to object constituted waiver as a matter of law and in refusing defendants instructions defining waiver. Ehrlich v. Insurance Co., 88 Mo. App. 249; Baldwin v. Insurance Co., 56 Mo. App. 151; Richards v. Insurance Co., 68 Mo. App. 591; Jordan v. Weber Co., 77 Mo. App. 577; Hamilton v. Railway, 80 Mo. App. 601; Fairbanks v. Baskett, 98 Mo. App. 68; 11 Ency. of Ev., pp. 5, 6 and cases cited; Armstrong v. Insurance Co., 130 N. Y. 560, 29 N. E. 991; Gardner v. New London, 28 Alt. 46, 63 Conn. 267; Balfour v. Parkinson (U. S.), 84 Fed. 861; Bank v. Maxwell, 55 Pac. 982, 123 Cal. 360, 69 Am. Rep. 64 (citing Roso v. Swan, 75 Tenn. 7 Lea 467).

*Thomas J. Tydings, Frank G. Harris* and *James P. Boyd* for respondents.

(1)   Respondents submit that the contract involved in this case is not of the kind that comes within the rule invoked by appellant, to-wit: That it is a contract requiring particular skill or involving particular trust, and, therefore, respondents could not resell the hogs without appellant's consent.   For a contract falling within the rule just given, see Lathrop v. Mayer, 86 Mo. App. 355. Any contract which does not expressly stipulate for the personal service, knowledge, skill and experience of another is assignable.   Empire Paving and Const. Co., v. Prathers' Admr., 58 Mo. App. 490; St. Louis v. Clemens, 42 Mo. 69; Sunday Mirror Co. v. Galvin, 55 Mo. App. 412.   (2)   This question of waiver is one of intention and is a proper question to submit to the jury. Fulkerson v. Lynn, 64 Mo. App. 649. Waiver is a mixed question of law and fact.   Ehrlich v. Insurance Co., 88 Mo. 249; Lee v. Hassett, 39 Mo. App. 67; Macrhildon v. O'Hare, 52 Mo. App. 523; Afflick v. Streeter, 125 Mo. 703-708.   (3)   But it is useless to argue the question further, as the whole matter was properly submitted to the jury by an instruction drawn by appellant and certainly it is now too late to discuss questions of fact.   The jury found against appellant on this point and there being substantial evidence to support the verdict, the same should not be disturbed.   Taussing v. Wind, 98 Mo. App. 129; Caldwell v. Van Ripper, 84 Mo. App. 563; Weller v. Wagner, 181 Mo. 151; Golder v. Tyer, 180 Mo. 196.

BROADDUS, P.  J.—This suit is based upon contract.   The case was here once before and is reported in 125 Mo. App. 703.   It was reversed and on trial anew plaintiffs recovered judgment and defendants appealed. For the purposes of this appeal, it becomes necessary, in a general way, to again restate the case.

The plaintiffs' cause of action is stated substantially as follows: In August, 1905, plaintiffs purchased from defendants a carload of hogs at the price of $5.75 per cwt., to be delivered in the following month of September, that defendant represented the hogs to be of a kind and description that would sell within ten cents per one hundred pounds of the highest market price any hogs would be sold on the market on the days said hogs would be sold; that he agreed, if the hogs failed to sell within the price named, he would refund to plaintiffs the difference between what the hogs actually sold for and the highest market price hogs should sell for on the same day; that defendant further agreed that, in the event any of the hogs were docked on account of pregnancy, or on account of having been males used for breeding purposes, he would pay the amount of such "dock." The statement alleges that plaintiffs, relying upon defendant's representations and without having seen the hogs, on or about the ——————— day of ———————, 1905, sold said hogs under a similar agreement to one John Rumans, and that on the 28th day of September defendant delivered the hogs to plaintiffs at Sturgeon, Missouri, and they at once delivered them to said Rumans, who with the knowledge and consent of defendant, shipped them to Chicago and sold them on the market at that place; that said hogs were not of the kind and quality that would sell at the price represented; that they were inferior in kind and quality; that some of them were pregnant and were docked forty pounds each when sold; that the hogs were sold at less price per cwt. than that named; that plaintiffs settled with said Rumans and paid him the difference in price received and that defendant represented they would sell for, and also paid him for loss sustained by reason of seven of the hogs having been docked. They ask judgment for the amount of the sum paid said Rumans on said settlement.

The plaintiffs' evidence tended to substantiate the statement of their contract, as pleaded; that they resold

the hogs to Rumans with the consent of defendant; that Rumans, after he bought the hogs of plaintiffs, had a conversation by telephone with defendant to the purport that he had bought the hogs; that the latter said he was to make the hogs bring the price named and wanted a settlement of the matter before they were shipped to market; and that Rumans told him he was going to ship the hogs to Chicago and defendant made no objections.

A witness by the name of Snell, who was acting for plaintiffs, testified that, before he paid for the hogs, defendant discussed the question as to how many of them would be subject to "dock"; that they could not agree about the matter, and that defendant agreed to let the hogs be shipped and to settle the dock as reported from the market. Snell further testified that, before he paid for the hogs, defendant asked him if Rumans was going to Chicago, and that he told him such was his intention, and asked him "if that had anything to do with the settlement, say so now; if not, I will settle for the hogs in full, and you can pay back the amount of the dock, and he accepted the settlement."

The defendant's version of the contract was somewhat different from that of the plaintiffs. His statements was that he said to plaintiffs, "You take the hogs and ship them and I will stand behind you."

The cause, on the former appeal, was reversed and remanded for the reason that the trial court sustained a demurrer to the plaintiffs' evidence. The opinion, however, suggested that, "The evidence is not clear that defendant was present and consented to a delay in the shipment of the hogs to market on the 2nd day of October." It was held that there was evidence that the contract contemplated that the hogs were to be shipped during the month of September. The court submitted the question to the jury in the following instruction: "The court instructs the jury that, if you believe from the evidence that it was agreed between plaintiff and defendant that the hogs should be delivered to plaintiffs

during the month of September and that they should
also be placed on the market and sold during the said
month, and if you further believe that the hogs were de-
livered to plaintiffs on September 28th, but were not
placed on the market until the 2nd day of October, and
that defendant never waived his right to have them
placed on market during September, then your verdict
should be for defendant."

Upon a review of the evidence, we find that it was
not admitted by plaintiffs that the hogs were to be placed
and sold on the market during the month of September.
The plaintiff Afflick, who testified as to the making of
the contract, stated that no time was set for that purpose.
Then, it was a question whether the hogs were placed
on the market within a reasonable time after delivery.

Therefore, the instruction in some respects did not
cover that issue in the case, but it did cover the issue
whether it was or was not agreed that the hogs should be
sold on the September market. It being a question of
fact and not of law, we are not called upon to say wheth-
er there was any waiver as to that matter. There was,
evidence sufficient to authorize a finding by the jury that
defendant waived the right to have said hogs shipped
to the Chicago market instead of the St. Louis market,
and there was sufficient evidence to authorize a finding
that defendant waived the right to have the plaintiffs in
person, or Rumans, their assignee, to accompany the
stock to market. All these issues were submitted to the
jury by proper instructions. It is true, some of the
instructions asked by defendant were not given in the
language as requested, but were amended by the court;
however, we believe the amendments made by the court
were such as ought to have been made and that defendant
obtained from the hands of the court the most liberal
treatment in that respect.

Finally, it is contended that there is no competent
evidence to show that plaintiffs were damaged. A wit-
ness by the name of Thompson testified that he sold

the hogs on the market in Chicago. He was asked what the hogs brought that he sold. His answer was, "Refer you to Exhibit A, hereto attached." He was again asked, "If you stated that you did sell some hogs for said Rumans on or about said date, please say the exact date and how many, if any of said hogs were docked? A. Refer you to Exhibits A and B, which show the number and amount of dockage. The six loads were all sold on October 2nd, 1905." W. T. Brown testified that he was the account clerk and cashier for the commission house that sold the hogs and that he made out the exhibits and that they were correct; that the accounts were made from tickets furnished by the Union Stock Yards and Transit Company. The deposition of Thompson was taken three times and that of Brown twice. An examination of these depositions will show that the weight of the hogs and the amount of the dockage were entered upon the books of the commission company that sold the hogs. Exhibit A was shown to be a carbon copy of the original entries upon the book made in the usual course of business. They were admissible as evidence. [Drumm-Flato Commission Co. v. Bank, 107 Mo. App. 426.] In Wright v. Railroad, 118 Mo. App. 392, in speaking of the rule in such cases, the court said, "In order to show the weight of the cattle, the plaintiff not having personally weighed them, resort was had to the weight as given by the stockyards company, which was taken from what is known as scale tickets containing weights. It is the custom of the commission companies operating at the stockyards in Chicago to receive scale tickets of weight and enter them upon their books as the basis upon which to rest the book account of sales of customers, and by which they settle with such customers, and for freight charges made by the carrier. It was shown that the books were made up at the time from original tickets." It was held that they were admissible in evidence.

And as the books were in another State beyond the jurisdiction of the court, it was held proper to receive verified copies, which are made exhibits in depositions. [Lumber Co. v. Lumber Co., 39 Mo. App. 214; Brown v. Wood, 19 Mo. 475.]

Many other questions are raised by appellant, but they are so extremely technical that we do not consider it necessary to discuss them, as the judgment, in our opinion, is for the right party.

Affirmed. All concur.