[No. 21338. Department Two. November 5, 1928.]

THE STATE OF WASHINGTON, *Respondent,* v. SIDNEY BRUNN, *Appellant.*[1]

[1]Reported in 271 Pac. 330.

*John J. Sullivan* and *John F. Dore,* for appellant.
*Ewing D. Colvin,* for respondent.

ASKREN, J.—The defendant was charged with the crime of forgery in the first degree. From a conviction and sentence thereon, he has appealed.

Appellant, for some time prior to trial, was a bail bond broker in the city of Seattle. As such broker, he was in the habit of securing bonds for his customers from the National Surety Company. The bonds were signed by C. B. White, resident vice-president, and T. A. Dean, resident assistant secretary. He posted with John B. Gordon, police court judge of Seattle, on June 29, 1925, a bail bond, purporting to be the bond of the National Surety Company, in the sum of five hundred dollars, for the appearance of one Falkner, defendant in a criminal action. The bond was a forgery, the signatures of both White and Dean having been forged. The bond itself was not the usual form of bond issued by the bonding company. Instead, it was the form usually sold at stationers, calling for the signatures of two individual sureties. The bond bears evidence that appellant's name had been typewritten in the bond, as a surety, and afterwards erased. Another surety's name was also written in the other blank space, and then erased, and the words National Surety Company inserted therein. At about the same time this forged bond was posted with the police judge, the appellant also posted twenty-six other bonds, of like character, all of them containing the forged names of White and Dean, upon behalf of the National Surety Company. Three of these were posted on the same day as the one here in question, and all of them

524

posted within a three-months' period. These twenty-six bonds were, all but one, on the same form as that used in the one charged in the information.

Appellant assigns error, upon the part of the trial court, in permitting the twenty-six bonds to be introduced in evidence. He contends that they were evidence of distinct offenses, in no manner related to the charge upon which he was tried. But we think appellant misconceives the purpose of this evidence. It was necessary for the state to show appellant's knowledge of the forged character of the instrument in question. His defense was that he received the bond in the same way that he received all bonds from the bonding company, and that he did not know it was forged. In this situation, evidence that, within a short period of time, he had posted twenty-six other bonds, all spurious and, with one exception, different in form from the genuine bonds he had been securing from the company, would tend to establish a guilty knowledge on his part. As the supreme court of Kansas said, in *State v. Wahl*, 118 Kan. 771, 236 Pac. 652, where the defendant was indicted for forgery and evidence was admitted that the defendant had negotiated a check similar to the one upon which he was tried,

"The evidence did tend to show that the defendant was dealing in Liminger's checks which Liminger had not signed and which were counterfeits. The fact that the testimony may have tended to show the commission of another offense does not make it inadmissible, if it throws light upon defendant's guilt of the offense charged." See, also, *People v. Hanson*, 62 Cal. App. 105, 216 Pac. 399, and 26 Cyc. 970.

Appellant argues that our decisions support a contrary view. He cites *State v. Bokien*, 14 Wash. 403, 44 Pac. 889, where the defendant was tried on a charge of having issued checks on a bank without funds to meet them. The trial court, in that action, admitted

evidence showing the issuance of checks by the defendant to other persons. We reversed the cause, holding that there was no connection between the act charged and the other acts offered in evidence. But we think there is a distinction between that case and this. There, we held that the act itself proved the intent; here the intent could not be proved by the act of uttering a forged instrument, unless it was shown that the appellant knew it was forged. To prove this, the use of the many bonds in question was quite necessary. In the *Bokien* case, the defendant himself drew the instrument. Here, the jury might find that he did not make or execute the instrument itself, but knew it to be forged. Nor is the case of *Buell v. Aberdeen State Bank*, 58 Wash. 407, 108 Pac. 951, helpful to appellant, because of the difference in the facts involved.

It also seems to be contended by appellant that, while there was proof of the forgery of the bond in question by some person and that appellant uttered the bond, there was not evidence of his guilty knowledge of its false character. Therefore, appellant argues, until this is shown, the other forgeries were inadmissible. But, as we have seen, the other forged bonds were introduced for the express purpose of showing the guilty knowledge.

Error is predicated on the failure of the court to instruct the jury to disregard the question of forgery, in so far as it would relate to the making or executing of the bond by appellant, i. e., that the only issue to be submitted to the jury was whether, knowing it to be forged, he did utter it. Upon this point, great stress is laid on the testimony of an expert witness who testified to the forgeries, but would not express an opinion as to whether the appellant had written the signatures. It is said that, if an expert would not give his opinion upon the question, then the jury must per-

force speculate upon the matter. While it is true that, in cases involving handwriting, the services of an expert are usually availed of for the purpose of advising and assisting the jury, still the fact must not be lost sight of that the very point to be decided by the jury, ultimately, would be the same as the question asked the expert: Did the appellant write the signatures? The jury is not bound by the expert's testimony. They had a right to consider all of the facts shown by the evidence in the case and arrive at their own conclusion. In this case, an expert would have to base his opinion solely upon a comparison of handwritings. The jury, on the other hand, had far more to consider. They saw the similarity in the handwriting; they inspected the bond and saw the erasures; noticed the form of bond used; the great number of this character used in a short space of time; and heard other evidence. From all these facts, they might well conclude that the appellant actually executed the bond in question.

Some complaint is made of the failure of the court to give certain instructions. We have examined them with care and find no error therein. Other questions raised do not require discussion.

Judgment affirmed.

FULLERTON, C. J., PARKER, FRENCH, and MAIN, JJ., concur.